IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT<br><br>*Plaintiff,*<br><br>v.<br><br>UNION PACIFIC RAILROAD, CO.<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: 8:21-cv-224<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY RELIEF

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") brings this Complaint against the Union Pacific Railroad Company ("UP" or "Carrier") for a declaratory order that UP has violated Section 2, Seventh the Railway Labor Act ("RLA"), 45 U.S.C. §§ 152, Seventh, by unilaterally changing and abrogating the parties' collective bargaining agreements. Additionally, BMWED and UP are presently engaged in the process of negotiating a new collective bargaining agreement. Under Section 6 of the RLA, 45 U.S.C. § 156, during the collective bargaining process, "the parties are obligated to maintain the status quo" until the steps of the RLA's processes are complete. *See Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302 (1989); *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 378 (1969). In violation of its obligation to maintain the status quo during bargaining, UP is attempting to unilaterally enact changes to work rules that the Carrier is currently seeking to change at the bargaining table.

1

## PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. BMWED is the duly designated representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of UP working in the class or craft of maintenance of way employee, including UP maintenance of way employees who live and work in this District. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes.

2. UP is a rail carrier as that term is defined in Section 1 First of the RLA. UP conducts rail operations in many states in the midwest, south and west, including in Nebraska.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over BMWED's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce. The Court has jurisdiction over the BMWED's request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c), and 45 U.S.C. §153 First(p) because UP owns and operates lines of railroad within this District and is headquartered in this District.

## STATEMENT OF THE CLAIM

5. BMWED is the collective bargaining representative of maintenance of way workers employed by UP. Among other things, UP's maintenance of way employees represented by BMWED are responsible for constructing, repairing, rehabilitating, upgrading, renewing,

inspecting and maintaining the Carrier's track and right of way, as well as bridges, buildings, and other structures.

6. In particular, the work of repairing, rehabilitating, upgrading, renewing, inspecting and maintaining rails on all on the UP properties has historically and customarily been done by maintenance of way employees to the exclusion of other crafts.

7. BMWED represented employees have been performing the construction, replacement, renewal, maintenance, and repair of track for UP since the inception of the Union's collective bargaining agreements ("CBAs" or "Agreements") with the Carrier. And the most recent Agreements that remain in effect with the Carrier include the "Scope Rules" and classification rules covering this work.

8. BMWED and UP are parties to a number of CBAs including:

    a) an agreement applicable on the UP territories and properties that were parts of the former Union Pacific R.R., as well as certain other (pre-merger) portions of UP ("UP Agreement");

    b) an agreement applicable on the UP territories and properties that were parts of the former Chicago and North Western Railroad ("UP CNW Agreement"); and

    c) an agreement that is applicable on the UP territories and properties that were parts of the former Southern Pacific Transportation Company-Western Lines ("UP SP Western Lines Agreement").

    d) an agreement that is applicable on the UP territories and properties that were parts of the former Missouri Pacific Railroad Company lines and parts of the former Southern Pacific Railroad Eastern Lines ("UP MoPac Agreement").

9. The Scope Rule of the UP Agreement – Rule 9 – describes various types of positions within the Track Subdepartment and then states that construction and maintenance of track, and other work on the track and right of way will be performed by forces in the UP Track Subdepartment who are represented by BMWED. Rule 9 states:

> Construction and maintenance of roadway and track, such as rail laying, tie renewals, ballasting, surfacing and lining track, fabrication of track panels, maintaining and renewing frogs, switches, railroad crossing, etc., repairing existing right of way fences, construction of new fences up to one continuous mile, ordinary individual repair or replacement of signs, mowing and cleaning right of way, loading, unloading, and handling of track material and other work incidental thereto will be performed by forces in the Track Subdepartment.

10. The Scope Rule of the UP CNW Agreement – Rule 1 – describes the work performed by BMWED represented employees and states that persons performing that work on lines, right of way and structures of the former CNW are covered by that agreement and that they shall perform all of that work. Rule 1 provides that it provides:

> Employees included within the scope of this Agreement in the Maintenance of Way and Structures Department shall perform all work in connection with the construction, maintenance, repair and dismantling of tracks, structures and other facilities used in the operation of the Company in the performance of common Carrier service on the operating property…

11. The Scope Rule of the UP SP Western Lines Agreement is addressed in Rule 1 and Rule 2 and describes the work performed by BMWED represented employees and states that persons performing that work on lines, right of way and structures of parts of the former Southern Pacific Transportation Company-Western Lines are covered by that agreement. Rule 1 provides that it "govern[s] rates of pay, hours of service, and working conditions of employees in all sub-departments of the Maintenance of Way and Structures Department (not including

exempt employees above the rank of track supervisor) represented by the Brotherhood of Maintenance of Way Employees. Rule 2 of the UP SP Western Lines Agreement lists the sub-departments included in the Maintenance of Way and Structures Department. Rule 2 provides:

> It is understood that the following sub-departments have been established within the Maintenance of Way and Structures Departments:
>
> > Track Sub-department
> > Bridge and Building Sub-department
> > Water Service Sub-department
> > (Electric and Mechanical #)
> > System Work Equipment Sub-department
> > Track Welding Sub-department
> > Miscellaneous Sub-department
>
> # Used for identification purposes only.
>
> Any other sub-departments that may hereafter be established will be by negotiation between the General Chairman and the Management.

12. The Scope Rule of the UP MoPac Agreement describes the work performed by BMWED represented employees and states that persons performing that work on lines, right of way and structures of the former Missouri Pacific Railroad Company lines and parts of the former Southern Pacific Railroad Eastern Lines are covered by that agreement. The Scope Rule provides:

> These rules govern the hours of service and working conditions of all employees herein named in the Maintenance of Way Department and sub-departments thereof (not including supervisory forces above the rank of foreman) as follows, in order of classification hierarchy, with the highest ranked position listed first…

13. Maintenance of Way employees represented by BMWED have historically and

5

customarily performed repairs on all of the Carrier's track and rails to the exclusion of other UP employees – including on all territories covered by the UP Agreement, the UP CNW Agreement, the UP SP Western Lines Agreement, and the UP MoPac Agreement.

14. Under the Railway Labor Act ("RLA"), CBAs do not expire. The CBAs contain "moratorium clauses" that prohibit the parties from seeking changes to their agreements for a specific period of time. After expiration of the moratorium clauses, the parties are free to seek changes to their agreements by serving a request upon the other party. Such a request is known as a "Section 6 Notice." *See* Section 6 of the RLA, 45 U.S.C. § 156.

15. BMWED and UP became able to serve Section 6 Notices on November 1, 2019, for changes to be effective on or after January 1, 2020.

16. On November 1, 2019, UP, represented by the National Carriers' Conference Committee ("NCCC"), served a Section 6 Notice to begin the process of negotiating amendments to its collective bargaining agreements with BMWED.

17. On November 4, 2019, BMWED served a Section 6 Notice on UP, seeking to bargain changes to BMWED's agreement with UP.

18. The NCCC's Section 6 Notice, covering UP as part of the railroads' coalition, detailed the Carrier's proposed changes to wages, health and welfare benefits, and work rules – including seeking greater flexibility in existing-work rules so that work currently reserved for BMWED members could be assigned to workers in other crafts. Specifically, the NCCC's Section 6 notice states that UP is seeking the following with regard to modifying the existing scope rules and reservation of work provisions of its agreements with BMWED:

> Updating provisions that restrict management discretion over the assignment of work or that continue to allow for "antiquated"

> [quotation marks added] methods of distribution of work assignments or that are inconsistent with the need to support 24/7 operations. Additional discretion in these areas would add flexibility over which crafts (as well as employees with certain qualifications within a craft) may perform work in various circumstances, when such work may be assigned and performed, the duration of time the work may be performed, and the circumstances under which work rules may be relaxed to meet customer demands…

19. BMWED members have always performed all work associated with replacement, renewal, maintenance, and repair of rail – including making temporary repairs such as installing "dutchmen", joint bars, and bolts.

20. Rail joint bars and bolts work together to secure two separate pieces of rail where they meet (i.e., the joint). Track bolts are inserted through holes in the joint bars and holes in the pieces of rail to secure the joint bars tight against the rail, essentially creating one continuous piece of rail. A dutchman is a small segment of rail that is typically installed where a rail end is chipped, broken or pulled apart in situations that would otherwise prevent the movement of trains. Installing a dutchman is a temporary repair that permits continued rail operation at restricted speed over the affected track.

21. In January 2021, UP issued directives attempting to assign tasks within the scope rules of the Agreements between UP and BMWED to members of the Brotherhood of Railroad Signalmen ("BRS") who work in the Signalman class or craft for UP and who are responsible for installing, maintaining, and repairing railroad signal systems and highway-rail crossing warning systems on the Carrier's railways. Specifically, UP sought to have BRS members perform the replacement, renewal, maintenance, and repair of rail, including temporary repairs such as installing dutchmen, joint bars, and bolts. This would constitute a unilateral change in UP's

agreements with BMWED since this work is reserved to BMWED forces.

22. On February 3, 2021, BMWED wrote to UP's Director of Labor Relations to request that the Carrier cease and desist from this unilateral change in the Agreements between UP and BMWED.

23. BMWED's letter raised that the Carrier implementing a unilateral change in the existing CBAs represents a violation of the RLA in its own right and reminded UP's Director of Labor Relations that because the Carrier is seeking greater flexibility in existing-working rules pursuant to the NCCC Section 6 Notice, unilaterally enacting these work rule changes is a failure to maintain the "status quo" and, again, a violation of the RLA.

24. BMWED's letter to UP's Director of Labor Relations included copies of emails between UP Signal Department Management and UP Track Department Management that BMWED obtained and that show that: (1) employees in the Signal Department have not performed this work in the past; (2) that employees in the Signal Department are not equipped and have not been equipped in the past to perform this work; and (3) that the Signal Department has only very recently been instructed to obtain tools and material that they do not currently use or have on hand in their department in order to perform this work.

25. A February 4th letter from UP's Director of Labor Relations to BMWED did not address the copies of emails between UP Signal Department Management and UP Track Department Management showing that UP Signalmen have not performed the BMWED scope covered tasks that UP is attempting to assign to them, that UP Signalmen do not have the tools for these tasks, and that UP Signal managers did not even know where to acquire those tools.

26. With its February 4th letter, UP stated its intent to proceed with its plan to abrogate the CBAs between the parties and violate the RLA by unilaterally changing the scope provisions and assigning work covered by the scope provisions of BMWED's CBAs with UP to Signalmen; and to violate the RLA by changing terms of the CBA and work rules that are the subject of UP's own proposals for changes to those agreements during the statutory status quo applicable after Service of Section 6 Notices.

**FIRST CAUSE OF ACTION**

27. BMWED repeats and realleges herein the allegations contained in paragraphs 1-26 above.

28. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, provides: "No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."

29. Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in the agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

30. Because UP is unilaterally changing and abrogating the parties' collective bargaining agreements the Carrier has violated Section 2, Seventh of the RLA.

## SECOND CAUSE OF ACTION

31. BMWED repeats and realleges herein the allegations contained in paragraphs 1-29 above.

32. Because UP is attempting to alter the status quo to enact work rule changes the Carrier is currently seeking to change at the bargaining table, the Carrier has violated Section 6 by failing to maintain the status quo during bargaining. *Consol. Rail Corp.*, 491 U.S. at 302 (1989); *Jacksonville Terminal Co.*, 394 U.S. at 378

## REQUEST FOR RELIEF

WHEREFORE, BMWED respectfully requests that the Court:

A. DECLARE that by having the track maintenance work performed by persons other than UP Maintenance-of-Way employees represented by the BMWED to perform the work, UP is violating Section 2, Seventh of the RLA;

B. DECLARE that by having the track maintenance work performed by persons other than UP Maintenance-of-Way employees represented by the BMWED to perform the work, UP is violating Section 6 of the RLA;

C. Grant BMWED such other and further legal and equitable relief that the Court deems just and proper; and

D. Grant BMWED its attorneys' fees and costs of this action.

## REQUEST FOR PLACE OF TRIAL

The Plaintiff requests trial to be held at Omaha, Nebraska.

Respectfully submitted,

/s/ Richard S. Edelman
Richard S. Edelman
Aaron S. Edelman
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street NW, Suite 400
Washington, DC 20036
(202) 783-0010
Redelman@MooneyGreen.com

/s/Robert E. O'Connor, Jr.
Robert E. O'Connor, Jr.
P.O. Box 451116
Omaha, NE 68145
(402) 330-5906
reolaw@aol.com

Counsel for the Brotherhood of Maintenance of Way Employes Division/IBT

June 15, 2021